## FRANCIS v. FRANCIS.

PUBLIC LANDS — INDIAN TREATY — RESERVATION — PATENT — RESTRICTING ALIENATION.

The treaty of September 24, 1819, between the United States and the Chippewa Indians (7 Stat. 203), providing that, from the lands thereby ceded by the Indians to the United States, there should be reserved (article 3) for the use of the children of B., and their heirs, 640 acres on the K. river, operated as a grant in fee to the reserveés; and a patent thereafter issued to them by the United States, in pursuance of article 3, of a tract of land containing 640 acres on the river K., describing it by metes and bounds, must be treated simply as a selection and designation of the land, and a clause in the patent, restrictive of alienation, was an attempt to exercise a right not reserved to the United States under the treaty, and hence ineffectual.

Error to Bay; Shepard, J. Submitted February 2, 1904. (Docket No. 66.) Decided April 5, 1904.

Ejectment by Ann Francis against Peter J. Francis and others. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Thomas E. Webster (James Van Kleeck,* of counsel), for appellant.

*Porter & Haffey (Chester L. Collins,* of counsel), for appellees.

MONTGOMERY, J. This is an action of ejectment. The plaintiff claims a life estate in the land in question under

a patent from the United States. The defendants claim title by adverse possession, having admittedly been in the occupation of the premises for more than 20 years. The patent under which plaintiff claims was a patent issued to the children of Bowkowtonden and their heirs, but containing a clause that the lands were never to be conveyed by them or their heirs without the consent and permission of the President of the United States. It is the claim of the plaintiff that, under this patent, the title remained in the United States in such sense that a title by adverse possession could not be acquired as against the heirs of the grantees named in the patent. The defendants, however, assert that by a treaty concluded at Saginaw, Mich., on the 24th of September, 1819 (7 Stat. 203), some five years prior to the grant of the patent, between the Chippewa Nation of Indians and the United States, the title to the land in question had been fully vested in the children of Bowkowtonden, leaving nothing to be done except to make proper designation of the land in question; that the only office of this patent was to designate the land; and that the attempt to restrict the power of alienation was an attempt to exercise a right not reserved to the United States under the treaty.

By the terms of the treaty in question, the Chippewa Nation ceded to the United States certain lands described. There were reserved from the lands so ceded certain named tracts for the use of the Chippewa Nation. In addition to that, by article 3 of the treaty (page 204), it was provided:

" There shall be reserved for the use of each of the persons hereinafter mentioned and their heirs, which persons are all Indians by descent, the following tracts of land: [after describing other tracts] For the use of the children of Bowkowtonden, six hundred and forty acres on the Kawkawling river."

That a good title to a portion of the lands of an Indian tribe may be granted to individuals by a treaty between the United States and the tribe, without an act of Con-

136 MICH.—19.

gress or any patent from the executive authority of the United States, is settled. *Jones* v. *Meehan*, 175 U. S. 1 (20 Sup. Ct. 1). A treaty between the United States and an Indian tribe should be construed, not according to the technical meaning of its words to lawyers, but in the sense in which it would be naturally understood by the parties to the treaty. It was also held, in the case just cited, that the reservation of land to Indians and persons of Indian descent in severalty, unless accompanied by words limiting its effect, is equivalent to a present grant of the title in fee simple, and that such title is alienable by the grantee at his pleasure, unless the United States, by a provision of the treaty or of an act of Congress, have expressly or impliedly prohibited or restricted its alienation. In *Auditor General* v. *Williams*, 94 Mich. 180 (53 N. W. 1097), this court held that, where the treaty itself restricted the power of alienation, such restriction would be given effect, and the reservee would be treated as in a sense a ward of the government. But the effect of the treaty in question has been determined by repeated adjudications of this court.

The effect of this article 3, under which the title was reserved in this case to the children of Bowkowtonden, was considered by the Supreme Court in *Stockton* v. *Williams*, 1 Doug. 546. In that case it was distinctly held that the treaty operated as a grant, and that, by the true construction of the treaty, nothing remained to be done except to designate the particular lands to be passed. In that case the court was dealing with lands reserved to Mokitchenoqua, which were to be located at and near the Grand Traverse of Flint river in such manner as the President of the United States might direct. It was held that the location of the lands became a duty devolving on the President by the treaty; that this duty he could execute without an act of Congress, the treaty, when ratified, being the supreme law of the land, which the President was bound to see executed; that locality was given by the terms of the treaty, with an authority to locate afterwards

by a survey making it definite; that, this authority being executed, the grant became as valid, as to the particular section designated by the President, as though the description had been incorporated in the treaty itself; that thereupon a fee passed to the reservee; and that the rights of the parties could in no wise be affected by the subsequent act of the President directing a patent to be issued.

This same provision of the treaty again came before the court in *Dewey* v. *Campau*, 4 Mich. 565, in which the term "reservation" was again held to be equivalent to an absolute grant, and the title passed as effectually as if a patent had been executed; that the title was conferred by the treaty; and that, while location was necessary to give it identity, when the location was duly made the title was consummated.

Again, in *Campau* v. *Dewey*, 9 Mich. 381, it was held that the title reserved by the treaty passed under the treaty, and required no patent. We have not overlooked the statement of counsel that in this last case the subject was discussed only by the dissenting judge; but an examination of the case discloses that upon this question the other members of the court agreed with Justice CHRISTIANCY. Indeed, it was truly said by Justice CHRISTIANCY in that case, referring to *Stockton* v. *Williams, supra:*

"This decision has for 16 years been recognized as the law governing the titles under this treaty, at least, and these must be quite numerous, many of which have doubtless been bought and sold on the faith of this decision. We are therefore compelled to recognize it as a rule of property which we are not at liberty to disturb."

As is suggested by the brief of defendants' counsel, this consideration appeals with still greater force at this time, when more than 50 years have elapsed since the decision in *Stockton* v. *Williams*, during which the doctrine of that case has doubtless been acted upon and considered as binding authority.

It only remains to be considered as to whether the words of the patent restricting alienation can be given effect.

As we have seen, the title to this property passed by the treaty. Nothing remained except the survey or designa· tion, which it became the duty of the government to make. The patent is evidence that the lands named in it were selected under this treaty. In fact, it recites that it is made in pursuance to the third article of the treaty, and contains a grant of a fee of the lands. This should be treated as a sufficient designation of the land, and, the title having previously passed, neither the executive department nor the Congress can divest the title, the treaty being the supreme law of the land. See *Jones* v. *Meehan,* *supra*, and the cases there cited and discussed.

It follows from these considerations, we think logically, that, the plaintiff being the heir of the children of Bow-· kowtonden, and having the right to convey, a title by prescription can be gained, and the occupancy of defendants has ripened into such title. None of the considerations which are urged in the able briefs of counsel for plaintiff have escaped our attention, but we think these considerations must rule the case. The briefs upon both sides, prepared with unusual care, have been of great benefit to the court.

The judgment will be affirmed, with costs.

The other Justices concurred.